Final argument for today is docket 25-3179, Abedi v. Carter. Counsel, please proceed when you're ready. May it please the Court. Rekha Sharma Crawford on behalf of Mr. Kaveh Abedi. Your Honors, there are two key issues at play in this matter. The first is mootness. On mootness, this appeal is not moot. Mr. Abedi remains on an order of supervision that is a direct product of his 2025 revocation of his order of supervision. An order of supervision that he was on for two decades with complete compliance. That revocation continues to be an act of control. I'm sorry, that order of supervision now continues to be an act of control over Mr. Abedi's liberty. And it continues to keep this matter a viable case in controversy under the Constitution. Because even though he was released from detention, government themselves have admitted that he was not released from custody. So if he remains in custody under an order of supervision that continues to control how he moves about in his daily life, we would submit to you that he is not just free to live his life, he continues to have consequences as a result of that continued control. Are you saying that it's no different than if he hadn't been released? If he hadn't been released, well, I think there's a difference with pure release, where he had no orders of supervision. That's fundamentally different than here, where the government continues to keep control. And in fact, now that he's been released, he's been released under greater conditions than even when he was released in 2002. Well, the problem I have with that is that we are here because there's been a habeas petition filed. And that petition asserted that Mr. Abedi was, quote, challenging only the legality of his current detention. I mean, it seems to me that's what we're talking about here in this habeas petition. No, Your Honor, because what was critical there is that there are regulations that govern how he may be detained. And those questions, those issues still remain viable. Because the one thing that the government has made clear is that they didn't voluntarily cease to do anything. That they only released Mr. Abedi because there was an order from the court. Well, are you now arguing an exception to the mootness doctrine that is different than your prior argument that he's still under these custody order of suspension? I think, Your Honor, there are exceptions to the mootness doctrine that apply. So let's, I mean, the first issue that I have is in this particular petition, he challenged one thing, which was the legality of his current detention. If he's got a problem now with his order of supervision, wouldn't that require a new petition? Well, no, Your Honor, because he challenged the legality of his detention based on how he came to be detained. That does not change. Those regulations don't change. And as long as he is subject to being re-detained, which he could be, and that is not speculative in any way given the line of cases that exist. And the line of the number of habeas cases just that are being seen across the state. So now you're again arguing an exception to the mootness doctrine under it's capable of repetition. I believe, Your Honor, I think it's all contained. I think in some ways what makes this complicated is the fact that they do somewhat overlap, right? Because the government's position is that the court should now dismiss this appeal as moot. That is their starting position. And so even before we can get into the merits, and I'd be happy to get into the merits, we have to deal with how does this court continue to have jurisdiction. And I would submit to you that you do continue to have jurisdiction because of some of these consequences that are flowing from his continued order of supervision. In addition, that there are matters here that are capable of repetition simply because the way that they detained him in the first instance was so unlawful. And now that they continue to say that they did nothing unlawful at all, then it continues to hold him in that same position. Well, the continuing injury that he's claiming flows from the removal order, right? No, Your Honor, it's not from the removal order because the removal order remains in place. That's why the order of suspension remains in place, right? It's because the removal order remains in place. The order of supervision, you mean? Yeah, sorry. Okay. But that flows from the removal order. It does and it doesn't. Well, it does. I mean, in this instance, so statutorily, I think we've kind of moved to the merits, and I'd be happy to address the merits. No, this is still mootness because you're arguing that there's secondary or collateral injuries that survive after resolution of the detention. I mean, there are. But the order of supervision comes about because once in abetti two, the court ordered release. They then put him back on an order of supervision, much like he'd been on an order of supervision for two decades, except they enhanced it. And they enhanced it as a direct result of the second abetti order of release. So I don't know that it flows so much from the existence of an order of removal as much as it does from his ability to be free from detention in compliance with or within the structure of the statute in the regulations. Because that's what allows for his release. The order of removal doesn't say you can then be released. It's that provision comes from a different authority. It's all together. And that authority comes from the statute, and then it comes from the regulations. But with regards to some of these other consequences that exist, and I think that that is part of the problem here, is that let's say, I think, Your Honor, you asked the question, well, why doesn't that then lead to another habeas petition where he can challenge the conditions of his order of release? The problem becomes is that when you leave in place the current order from the district court, if you leave it in place the way it exists, then the problem that comes about is that if he challenges it, and we know that it's an increase in heightened condition, if he challenges it and immigration at that point says, okay, we're just going to go ahead and re-detain you, we are right back within the same parameters of the first habeas petition, which would be an unlawful detention followed by an improper application of the Zevedes framework. And so in that sense, it does kind of go full circle and is capable of repetition to where it would continue to evade review. But insofar as the government, and I think it's very important that the government here continues to say that they don't in any way agree that they lacked the authority to act in the way that they did, that their interpretation of the regulations was in fact correct. And so if that's true, in this instance, what do we have? We have specific facts that show that there were no procedural safeguards that were provided for from either the Constitution or the statute itself. And so if that's true, that's why I say is any challenge to any kind of order of supervision or condition of supervision at that point opens him up to the exact same process again. On the merits, though, Your Honor, I'd like to turn a little bit to the merits. I believe that the court should adopt a clear rule. And that rule is that the law gives the government six months from the order of removal to accomplish removal. After that period has lapsed, a person placed on an order of supervision who has not violated the conditions cannot be redetained on speculation alone. That the government must show concrete identifiable progress before or towards actual removal. Not an effort, not an intent, but actual progress before it may deprive a person of liberty in any way. Can you flesh that out? What would satisfy that standard? Well, Your Honor, I believe if you look at the structure of 1231, 1231 on its face creates a 90-day removal period. That 90-day removal period, and in some ways, the statute flows in a very linear direction. In the sense that it starts with a 90-day removal period that is contingent upon a couple of things. Number one, it's a final administrative order. Or if there's a judicial challenge to the order, when that order becomes final. And thirdly, if the person is not in immigration custody, let's say they're in criminal custody and they come into criminal custody, that does not in any way stop that, you know, that starts that 90-day clock. Once that 90-day clock is over, and the statute is clear, it says that the government shall detain during that 90 days. After that period of time, it says that the government may release the person on an order of supervision. That next piece of that statute does not have a ceiling amount. So what I mean by that is it doesn't say, and then that's an additional 90 days. It allows for a 90-day review, but it doesn't necessarily cap it. That's where the Supreme Court's decision in Zevedes comes into play. And because Zevedes says there's a presumption of that of six months, and that the court should then allow for, or if the individual can show that there is no good reason to believe that removal will occur, then the burden shifts to the government to show that there is a significant likelihood. And that's what we're saying here. And I see I'm running out of time, Your Honors. I'd like to reserve the rest of my time for rebuttal. Very well. You can proceed. Okay. Good morning, everyone. May it please the Court. On behalf of the United States. Your Honors, this case is moot. This is a habeas case where the petitioner is no longer in detention. And I think it's important, as the question suggested, to go through both what the starting point is for the mootness analysis and then the exceptions that the petitioner is trying to invoke in this case. So the starting point for mootness is whether this plaintiff, this petitioner, remains suffering an actual injury that can be redressed by a favorable judicial decision on appeal. And if we look at the things that have been requested in this habeas petition, the answer is clearly no. The first thing that the petitioner has requested in this case is an order temporarily barring his transfer or removal while the district court considers the case. That's obviously over with. That was a preliminary form of review. It became moot once the district court ruled on the merits. And there's nothing left for this court to do on appeal with that. The second form of relief this petitioner has asked for is a release from detention. That's already happened. Obviously, there's nothing a favorable appellate court order would do in that regard either. The third form of relief that this petitioner has asked for is an award of attorney's fees. Well, of course, the district court never got there because the petitioner was not the prevailing party below. And a claim for attorney's fees sort of in the ether when there's no substantive claim that is still alive as a case or controversy isn't enough to avoid the doctrine of mootness. So then the fourth type of relief that this petitioner has asked for is effectively a declaratory judgment to say, when the United States revoked my order of supervision and then re-detained me in 2025, he's asking for a declaration that that was unlawful. But the test, as the court knows, for a declaratory judgment claim or form of relief, the principles of mootness don't largely change. And so for the petitioner to make out a case that this case is not moot for a declaratory judgment, he has to show that there is a good chance, in quotations, that's the language from the opinions, that he will be likewise, also from the opinions, injured by the United States in the future. And he has not made that showing in his response to the motion to dismiss in this case. To do that, the petitioner would have to show that the United States, again, will determine that there is a significant likelihood of removal in the reasonably foreseeable future, which is a predicate to revoking an order of supervision and restarting detention under the applicable statute for an alien with a final order of removal. As the question suggested earlier, that's 8 U.S.C. 1231. The petitioner would also have to show that the United States will again revoke his OSIP in the future, his order of supervision, re-detain him in circumstances governed by the particular regulatory provisions that we are arguing about in this case. Those are under 8 CFR 241.4 and 241.15. And the petitioner would have to show that the United States, again, allegedly, will decline to provide, after re-detaining the petitioner, a timely and formal interview and a timely post-order custody review, whether it's at 90 days or 180 days or whatever the increment is. And, Your Honors, there's no evidence of any of that in the record of the response to the motion. Well, is that right? There's a January 2026 ICE document in which the deputy field office director says that ICE, quote, expects to receive the necessary travel documents to effectuate removal, and removal is likely to occur in the reasonable foreseeable future. So it's not like they've just put this man on a shelf. They're trying to remove him. That is what happened in the first case, Your Honor, but that's why the second habeas case becomes important, because as the court knows from looking at those papers, what happens in the second habeas case, so this appeal is pending, you know, this judgment has been appealed to this court. While that is underway, the petitioner files the second habeas petition, and in the second habeas petition, that is granted by the district court. And in the verified allegations of that second habeas petition and in the district court's order, there are findings to the effect that the agency, ICE in this case, did a post-order custody review, and as a result of that post-order custody review, two of the local agents, ICE, recommended that this petitioner not be detained anymore. In other words, there wasn't a basis in those individuals' views to continue with detention, which resulted in the district court adopting those as part of its findings of fact and granting the second habeas petition. So to answer your question, Your Honor, what superseding events have shown us what the likelihood is that this precise history for this petitioner will repeat itself? And they're simply not very great, those odds. She also argues that it's not moot because there are collateral injuries that survive the release from detention, and in particular points to an order of supervision that is more restrictive than the pre-detention order. Can you address that? Yes, thank you for that question, Your Honor. And as the court knows, the test for a collateral consequence is there has to be a concrete and continuing injury to get out of the mootness doctrine. And here, the problem with the petitioner's argument, focusing on the specific conditions of release in 2026 versus 2025, is first of all, there's no evidence of any of that. In response to our motion, there's no evidence submitted to show what the conditions were before, what they were after, or that the cause of the allegedly heightened conditions in 2026 was the actions that are being challenged in the underlying habeas petition. But even if there were evidence to that effect in the record, there just isn't any evidence in this record to show that a favorable appellate order would change any of those allegedly heightened conditions of supervision. As the court's questions in the first session pointed out, this petitioner is going to be under supervision no matter what. He has a final order of removal. That will not change no matter what this court rules in this appeal, nor will any favorable appellate ruling in this case change the granular conditions of release for this petitioner as they exist in 2026. It won't do anything for that. It won't change that at all. That leaves the petitioner only with an argument that you see in their brief to say, well, if I get a favorable appellate order here, maybe I could use that in a future custody review. And that might either get me out of detention or shorten my detention if I've ever picked up in the future. That's precisely the type of a scenario that this court's cases are clear. It's speculative. It's conjectural. He would have to get picked up again. The same circumstances would have to be at play. And then the 2025 revocation of the OSOP and the detention would have to be the deciding factor among the many factors the agency could consider in that circumstance. Well, as we sit here and we measure the possibilities based on what we are provided in the record and the argument, we do know that there is a Colorado case in which someone who went on habeas was then re-detained in Texas. Sounds to me like that's not so unheard of or unlikely that we should just disregard it. Your Honor, I agree it's possible. And certainly it's not our position today to come and say there's no possibility that this individual could ever be retained. Re-detained, I should say. That's true. But that's not really the test for mootness. Again, it's a good chance that this petitioner, not petitioners in other cases, not petitioners elsewhere, this petitioner will be re-detained under the same circumstances as happened in 2025. And I'll give you an example. This isn't a habeas case. But one of the cases we've cited in our motion to dismiss is a 2007 case from this court that has to do with a school district. It's USD 259. And the issue in that case was an outside agency wanted certain educational records. And the school district resisted that and thought the outside agency did not have access or should not have access to those records and it filed a declaratory judgment action and said, we'd like a declaration to say this agency has no right to the records they are requesting. While that was pending, the agency withdrew the request for the records. But there was no question that agency had the ability to file another request for records in the future. That was uncontested. But this court still said that controversy was moot because not only was it speculative whether that second or third or fourth request would be made in the first place, it was not certain at all that the factual circumstances of the next request would replicate the factual circumstances of the initial request. And we have the same situation here. It's speculative without any evidence to the contrary to show that this petitioner will be re-detained again in the future. And again, the second habeas petition, the evidence suggests that is not likely. But even if he was, that factual scenario would have to replicate what happened in 2025 to avoid the moot construction. And there's simply no evidence that any of that's going to occur. Well, what would replicate it? As we said, Your Honor, he would have to be re-detained. The same regulatory provisions would have to be at issue, 241.4, 241.13. And for a second time, after the United States has now concluded, apparently, that there is a reasonable likelihood of removal, they would have to go on. And there would have to be the lack of a timely informal interview and the lack of a timely post-custody review. So all those things would have to happen. A redo. And I'm not sure why any of those wouldn't happen based on what happened the first time. It's theoretically possible, Your Honor. But again, the evidence in this case, the second habeas petition shows us it's not likely in this case because of what happened and led the district court to grant the second habeas petition. That's the only evidence in the record, Your Honor, about what the probability of history repeating itself is. It's the evidence from the second habeas petition. There's no evidence on the part of the petitioner submitted in response to our motion to dismiss to dispute any of that evidence. So that, Your Honor, is the reason why it's simply not likely enough under the test for collateral consequences or any other similar exception to the mootness doctrine to avoid mootness in this case. Very quickly, the two other mootness exceptions, which were raised in the initial Q&A, those, of course, are the capable of repetition yet evading review exception. And as the court knows, there's two elements to that. The duration of whatever the challenge action has to be too short to be fully litigated on appeal. And you would concede that we have that prong here? No, we do not, Your Honor, because we know in this case there would have been time to litigate the merits of this case but for the second habeas petition. In other words, the thing that mooted this case is not any feature of immigration custody. It's the fact that a second habeas petition was granted by the district court. And, by the way, we're unaware, Your Honor, of any cases cited in the petitioner's papers which says, in general, immigration detention is too short to allow appellate review. But we have other cases that say that 12 months is too short under Turner. And we have the Supreme Court telling us that there's a presumption that six months is all you can hold someone in detention before it becomes unreasonable, right? Well, the six months is a presumption, Your Honor. It's not a flat rule. It's a presumption. But, I mean, to suggest, I mean, well, okay, you don't concede the first prong. But you've already discussed the second prong, which is the same person under the same conditions would be subject to the same action. That's correct, Your Honor. In the language of that exception, the second prong is just different words, really, for the analysis we've been discussing earlier about the likelihood under the mootness doctrine itself. All right. So then the third exception to the mootness doctrine, which has been raised by the petitioner, of course, is voluntary cessation. In our view, this doesn't apply at all in this case. I mean, the point of this exception is to avoid game playing. So whether it's the United States or another party, you can't get an adverse judgment, then get up on appeal and get cold feet and think, hmm, I don't really want an appellate ruling on this. Therefore, I'm going to stop whatever the conduct is that's being challenged and get myself out of a negative appellate ruling. But that's not what's happening in this case, Your Honor. We're confident of our position on the merits. We didn't moot the case. The case became moot when the petitioner filed a second habeas petition, which was granted by the district court. So there simply is no—none of the game playing that animates the voluntary cessation exception is present in this case. And the United States is not the party that caused the mootness in this matter anyway. And I should add, Your Honor, that on top of the baseline mootness doctrine, these three exceptions, that's all constitutional mootness. Even if the facts in this case persuaded the court that they inched themselves over the line to create a constitutional case or controversy, then the court still has it within its discretion to look at the prudential mootness doctrine. So in other words, if you just barely get over the line under the constitutional guideposts, there's still an ability for the court to say this case is moot under the prudential mootness doctrine. And we've tried to lay out in our briefs exactly why that doctrine applies well, even if the court gets there. I see I'm down to one minute of my time, Your Honor. Unless there are questions from the court, our view is strongly this case is moot. It should never be considered on the merits, and to do so would be effectively an advisory opinion. So with that, I'll end my presentation unless there are any questions. Very well. Thank you. Thank you. Just a few points, Your Honor. First and foremost, what the government is asking is as they say, well, you should never have filed the second habeas, and then you could have gotten your review here. What that juxtaposes, Your Honor, is the right to due process on an appeal versus the right to one's fundamental right to freedom. That's what they've put together. I would submit to you that that is a false equivalent, that that cannot be what would allow someone to be able to exercise their rights meaningfully. The second habeas petition was very, very narrow. In fact, the only thing that the court found there is that the 180 days under Zafetis had been crossed, and that at that point, the evidence before the court was no different, quite honestly, as it was in the first habeas, which is that there was no likelihood, not only no significant likelihood, there was no likelihood, because the court had evidence before it to show that there had been no steps taken, no concrete steps at all, so when Your Honor asked the question, it looked like they were trying to remove him. The problem with that is when you look at the testimony of Agent Giles, what's in there, that there were nothing, there were no steps taken at all, that the policy was detained first and then figure it out later, and the problem is that that's not concrete steps, that's not even a basis to try and revoke someone's order of supervision under the Zafetis framework, which specifically finds that the purpose of redetention is so that at the moment of removal, the person is available, and in that instance, where Agent Giles says, we didn't do anything, then at that point, there was really no possibility of removal whatsoever. Which is why the district court granted the habeas petition. In the second one, but Agent Giles' evidence was in the first habeas petition. That evidence was something that the district court did not interact with at all, and so that's part of the problem, Your Honor. The district court's decision is so fundamentally flawed because— The first habeas decision. Yes, ma'am. That's not before us in this appeal. That is the appeal. The first habeas petition is the appeal. Oh, okay, but he's out now. He's out, but the problem becomes is that order is so fundamentally flawed because it indicates certain things. It indicates—that order indicates that even though— So you want us to give—to advise the district court that that prior decision was wrong. Your Honor, what we would ask is that you remedy the wrong. The remedy the wrong that occurred here and is not speculative that it would happen again. The regulatory violations are not speculative. IFM is the District of Colorado case that Your Honor discussed, and that is a case where they showed that there was redetention. But Pennegill, we've identified in our brief, also. In Seguenza, there's a list of cases where the courts find that redetention is not so speculative as the government would have you believe. And I see I'm out of time. Thank you, Your Honors. Thank you, counsel. The case is submitted, and counsel are excused. The court stands in recess until tomorrow, 9 in the morning.